IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATHANIEL FELTON BRANCH, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-6-BN |
| | § | |
| ANDREW SAUL,[1] Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Nathaniel F. B., Jr. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

## **Background**

Plaintiff alleges that he is disabled due to a variety of ailments including back difficulties, stroke, right side paralysis, problems with short and long-term memory, and difficulties walking and with speech. After his application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 11, 2017. *See* Dkt. No. 13-1 at 43-63. At the time of the hearing, Plaintiff was 54 years old.

---

[1]Andrew M. Saul took office as the Commissioner of the Social Security Administration on June 17, 2019. Commissioner Saul is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

He is a high school graduate and has past work experience as a tow truck driver, restaurant manager, sales engineer, and customer sales representative. Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of April 14, 2014 through the date last insured of December 31, 2014 ("the relevant period").

The ALJ found that Plaintiff was not disabled during the relevant period and therefore not entitled to disability benefits. *See id.* at 19-25. Although the medical evidence established that through the date last insured Plaintiff suffered from degenerative disc disease, hypertension, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that through the date last insured Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, and could return to his past relevant employment as an outside sales representative, customer service representative, ticket seller, host and restaurant manager. Alternatively, relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a price tagger, office cleaner and cashier – jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

In a single ground for relief, Plaintiff contends that the ALJ's RFC is contrary to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), because no physician indicated how Plaintiff's back impairment affected his ability to work and the only evidence of that came from Plaintiff's testimony.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

Plaintiff's sole ground–that the ALJ's residual RFC is not supported by a medical opinion and is therefore not supported by substantial evidence–compels remand.[2] Specifically, Plaintiff argues that the ALJ's RFC is inconsistent with *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), because no physician identified work-related limitations associated with his back impairment.

In *Ripley*, the claimant argued that the ALJ failed to develop the record fully and fairly by finding that he could perform sedentary work even though there was no medical testimony to support that conclusion. *See id.* at 552. The United States Court of Appeals for the Fifth Circuit noted that, although an ALJ should usually request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *See id.* Rather, the court had to consider whether there was substantial evidence in the record to support the ALJ's decision. *See id.* The record contained "a vast amount of medical evidence" establishing that the claimant had a back problem, but it did not clearly establish the effect of that problem on his ability to work, so the ALJ's RFC determination was not supported by substantial evidence. *See id.* The Fifth Circuit remanded the case with instructions to the ALJ to obtain a

---

[2] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

report from a treating physician. *See id.* at 557-58. Notably, the Fifth Circuit rejected the Commissioner's argument that the medical reports that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how small," on his ability to work, absent a report from a qualified medical expert. *See Lagrone v. Colvin*, No. 4:12-cv-792-Y, 2013 WL 6157164, at *9 (N.D. Tex. Nov. 22, 2013) (quoting *Ripley*, 67 F.3d at 558 n.27).

Like *Ripley*, the record here contains evidence of Plaintiff's back impairment.

On May 22, 2014, Plaintiff presented to Foundation Physicians Group for an orthopedic consultation, reporting he recently sustained injuries to his back after a motor vehicle accident. *See* Dkt. No. 13-1 at 288. Plaintiff described gradually worsening back pain and estimated he could sit for twenty minutes, stand for ten minutes, and walk for fifteen minutes. *See id.* Orthopedic physician Huntly Chapman observed antalgic gait, and, on examination, he noted that cervical range of motion was two-thirds of full with pain and stiffness in all planes. *See id.* at 289. He also reviewed recent studies of the cervical, thoracic, and lumbar spine, which confirmed findings suggestive of pain or spasm, an L1-L2 disc protrusion with spinal cord contact, and a "sizable" tear at L2-L3, resulting in mild-to-moderate indentation of the thecal sac. *See id.* at 288. Studies also confirmed cervical and lumbar spondylosis with loss of lumbar disc height, endplate osteophytes, and facet hypertrophy. *See id.* at 272, 274, 288. Dr.

Chapman prescribed Norco and Flexeril and advised Plaintiff to pursue physical therapy. *See id.* at 289.

When Plaintiff returned the following month, he described worsening pain that now radiated to his neck. *See id.* at 287. Dr. Chapman observed an antalgic gait, adding that Plaintiff ambulated with a cane. *See id.* Lumbar range of motion was "extremely limited," and sensation loss was noted in the S1 distribution. *Id.* Dr. Chapman's impression was lumbar radiculopathy and sprain/strain of the lumbar and cervical spine. *See id.* He recommended lumbar epidural steroid injections and a lumbar CT study for further review. *See id.*

On August 28, 2014, Plaintiff underwent a CT study of the lumbar spine, which revealed broad disc bulges at L3-L4, L4-L5, and L5-S1, the latter of which was accompanied by findings of moderate bilateral neural forminal narrowing. *See id.* at 276. Radiologist Nicholas Iwasko, M.D., interpreted the findings as suggestive of bilateral L5 nerve root infringement. *See id.* at 277. Plaintiff underwent epidural steroid injections to the right L5 and S1 nerve roots. *See id.* at 278.

Plaintiff returned to Dr. Chapman on September 10, 2014, reporting that, despite some improvement, his neck and low back pain remained an eight out of ten on a ten-point pain intensity scale. *See id.* at 286. Dr. Chapman examined Plaintiff to find a positive sitting straight-leg raise on the right and a positive Kemp's test. *See id.* Dr. Chapman refilled prescriptions for Norco and Flexeril, *see id.*, and administered a selective bilateral nerve root block at L2, *see id.* at 279.

On September 26, 2014, Plaintiff returned to Foundation Physicians Group where he was evaluated by Dr. James Stanley. *See id.* at 283. Plaintiff again endorsed back pain, adding that it kept him awake all night. *See id.* On examination, Dr. Stanley observed elevated blood pressure as well as mildly decreased lumbar range of motion and paraspinal muscle tenderness. *See id.* at 283-84. Plaintiff also demonstrated decreased sensation in the L5 distribution of the right foot, and straight-leg raise was positive on the right. *See id.* at 284. After reviewing the recent imaging, Dr. Stanley recommended nerve root blocks and further evaluation. *See id.*

Plaintiff returned to Dr. Stanley on October 31, 2014, reported temporary relief from the nerve root block, but added that he had recently fallen due to weakness in his legs. *See id.* at 281. As before, Dr. Stanley noted mildly decreased range of motion and paraspinal muscle tenderness. *See id.* Dr. Stanley concluded that Plaintiff "tried and failed conservative treatment," and, in light of Plaintiff's "significant foraminal stenosis," he recommended Plaintiff undergo lumbar fusion surgery at L2-L3 and L5-S1. *See id.*

After December 31, 2014, the date last insured, Plaintiff continued to received treatment for low back pain. He underwent an L2 and L5 laminectomy, L2-L3 discetomy with hardware removal, and L5-S1 fusion. Plaintiff also continued treatment for type II diabetes, hypertension, and sequela from a stroke he sustained on July 30, 2015. Examinations variously revealed findings such as back tenderness, decreased

sensation, motor loss, a positive straight-leg finding, and a slow limping gait with use of a cane. *See* Dkt. No. 17 at 11 (record citations at notes 46-55).

At the administrative hearing, Plaintiff recounted his medical history, including that he underwent back surgery in 2007. *See id.* at 54-54. According to Plaintiff, the surgery was successful and allowed him to lead a relatively "normal life." *Id.* at 54. That all changed in April 2014 after a motor vehicle accident, causing Plaintiff to re-injure his back, requiring steroid injections, and, ultimately, a July 19, 2017 spinal infusion. *See id.* at 54, 56-57. When asked to describe his limitation at the time of the accident, Plaintiff responded that he was unable to lift five pounds and could only walk about ten minutes before needing to lie down. *See id.* at 57-58. He estimated that he was able to stand for about five minutes but agreed that "lying down was the best way to be." *Id.* at 58.

Two State agency medical consultants ("SMACs") examined Plaintiff's medical records at the initial and reconsideration stages of administrative review. At the initial level, SAMC Shabnam Rehman, M.D. concluded on September 8, 2016 that there was insufficient evidence prior to the date last insured for a medical evaluation. *See* Dkt. No. 13-1 at 68. On reconsideration, SAMC Karen Lee, M.D. agreed that "[t]he evidence is insufficient to make a medical assessment." *Id.* at 78. Neither SAMC identified any specific work-related limitation. *See id.* at 68, 78.

The ALJ found that, through the date last insured, Plaintiff had the RFC to sit up to six hours, stand and walk six hours in an eight-hour day, and lift ten pounds

frequently and twenty pounds occasionally. The ALJ also found that Plaintiff could never climb ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. *See* Dkt. No. 13-1 at 22.

The ALJ acknowledged that "[t]he [SAMCs] found there was insufficient evidence to establish the claimant had debilitating limitations during the time that he was insured for Title II benefits." *Id.* But she did not identify any acceptable medical source opinion as to how Plaintiff's back impairments affected his ability to work.

Although the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole, *see* 20 C.F.R. § 404.1546(c), "[s]he cannot independently decide the effects of Plaintiff's…impairments on [his] ability to work, as that is expressly prohibited by *Ripley*," *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013). There are no medical opinions in the record regarding the effects Plaintiff's impairments had on his ability to work – rather, the ALJ appears to have relied upon the medical evidence in determining Plaintiff's RFC. *See* Dkt. No. 13-1 at 22-23. None of that evidence addressed the effects of Plaintiff's back impairments on his ability to work, however. *See Browning v. Barnhart*, No. 1:01-cv-637, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003) (finding despite the fact that there was a vast amount of treating sources' medical evidence in the record establishing that plaintiff suffered from certain impairments, including voluminous progress reports, clinical notes, and lab reports, "none [made] any explicit or implied reference to effects these conditions [had] on claimant's ability to work" and the ALJ

could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

The ALJ appears to have relied on her own opinion, which she may not do. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (explaining that "[a]n ALJ may not – without the opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *Tyler v. Colvin*, No. 3:15-cv-3917-D, 2016 WL 7386207, at *10 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination). *Davis v. Astrue*, No. 1:11 CV-00267-SA-JMV, 2012 WL 6757440, at *5 (N.D. Miss. Nov. 6, 2012) ("In formulating a claimant's RFC, the ALJ—a layperson—may not substitute his own judgment for that of a physician.")

The Court concludes that the final decision of the Commissioner is not supported by substantial evidence because the ALJ made the RFC assessment without a medical opinion addressing the effects of Plaintiff's back impairments on his ability to work. *See Ripley*, 67 F.3d at 557-58; *Williams,* 355 F. App'x at 832 n.6.

But the procedural error alone should not automatically result in reversal of the Commissioner's decision. "Procedural perfection in administrative proceeding is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per

curiam). When an ALJ commits a *Ripley* error, remand "is appropriate only if [plaintiff] shows that he was prejudiced." *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 558 n.22. On this record, that is the case here based on the medical evidence explained above.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: March 31, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE